Case: 12-1584    Document: 19    Filed: 09/11/2012    Page: 1

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

### Case Nos. 12-1128, 12-1584, 12-1585 and 12-1738

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE,

        Plaintiff-Appellee,

v

STEVEN L. WOODWARD,

        Defendant-Appellant

**Appeal from the United States District Court for the Eastern District of Michigan
Lower Court Case No. 10-10978**

## CORRECTED
## AMERICAN UNIVERSITY OF ANTIGUA'S BRIEF ON APPEAL

### ORAL ARGUMENT REQUESTED

**Submitted by:**
*Eric A. Buikema*
*Cardelli, Lanfear & Buikema, P.C.*
*322 W. Lincoln*
*Royal Oak, MI 48067*
*(248) 544-1100*
*Fax: (248) 544-1191*
**ebuikema@cardellilaw.com**

## DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 26.1 and Fed. R. App. Pro. 26.1, American University of Antigua makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

**American University of Antigua Answers: No.**

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

**American University of Antigua Answers: No.**

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST ..................................................................... ii

INDEX OF AUTHORITIES ................................................................. iv

STATEMENT REGARDING ORAL ARGUMENT ............................................. vii

STATEMENT OF JURISDICTION ...................................................... viii

STATEMENT OF ISSUES FOR REIVEW ...................................................... x

STATEMENT OF THE CASE ................................................................. 1

STATEMENT OF FACTS .................................................................. 5

STATEMENT OF STANDARD OF REVIEW ....................................................... 15

SUMMARY OF ARGUMENT ................................................................. 16

    I.    The District Court Properly Concluded that Woodward's Statement were Defamatory ............................................. 16

    II.    The District Court Properly Entered a Permanent Injunction ............ 30

CONCLUSION & RELIEF REQUESTED ............................................. 32

Case: 12-1584    Document: 19    Filed: 09/11/2012    Page: 3

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d (1986) ................................................................. 15

*Arim v General Motors Corp*. 206 Mich. App. 178, 195; 520 N.W.2d 695 (1994) ..................................................................... 24

*Asea, Inc. v. Southern Pacific Transportation Co.*, 669 F.2d 1242, 1245 (9th Cir., 1982) ................................................................. 26

*Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 467 (6th Cir., 2009) ................... 29

*Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499, 104 S. Ct. 1949, 80 L. Ed. 2d 50 (1984. ........................................ 16

*Brunsell v. City of Zeeland*, 467 Mich. 293; 651 N.W.2d 388 (2002) ................... 22

*Campbell v. Bank One*, 79 Fed. App. 760, 762 (6th Cir. Mich. 2003) ................... 17

*Celotex Corp., v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) ..................................................................... 16

*Community for Creative Non-Violence v. Pierce*, 259 U.S. App. D.C. 134, 814 F.2d 663, 672 (D.C.Cir. 1987) ........................................ 30

*Community for Creative Non-Violence v. Pierce*, 814 F.2d 663, 671 (D.C. Cir., 1987) ................................................................. 18

*Compuware Corp. v. Moody's Investors Servs.*, 499 F.3d 520, 525-526 (6th Cir. Mich., 2007) ................................................................. 16

*Dearborn Heights Sch Dist No 7 v. Wayne County MEA/NEA*, 233 Mich. App. 120, 124; 592 N.W.2d 408 (1998) .............................. 24

*Detroit v. Qualls*, 434 Mich. 340; 454 N.W.2d 374 (1990) .............................. 24

*Diplomat Electric, Inc v Westinghouse Electric Supply Co*, 378 F2d 377, 383 (5th Cir., 1967) ................................................................. 19

iv

Case: 12-1584     Document: 19     Filed: 09/11/2012     Page: 5

*EEOC v. Baby Products Co.*, 89 F.R.D. 129, 131 (E.D. Mich., 1981) ................... 26

*Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006) .......................................................................................................... 29

*Heritage Optical Center, Inc. v. Levine*, 137 Mich. App. 793, 797; 359 N.W.2d 210 (1984) ............................................................................. 17, 19

*Hoffman v. Washington Post Co.*, 433 F. Supp. 600 (D.D.C. 1977) ..................... 18

*In re Heritage Bond Litig.*, 220 F.R.D. 624, 626 (C.D. Cal., 2004) ...................... 26

*Lassiter v. Lassiter*, 456 F. Supp. 2d 876 (E.D. Ky. 2006), *aff'd*, 280 F. App'x 503 (6th Cir. 2008) .......................................................... 31

*Lothschuetz v. Carpenter*, 898 F.2d 1200, 1206 (6th Cir. Ohio 1990) .................. 30

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct 1348, 89 L.Ed. 2d 538 (1986) ........................................... 15

*Nuyen v. Slater*, 372 Mich. 654; 127 N.W.2d 369 (1964) ................................. 18

*People v. Gates*, 434 Mich. 146, 154; 452 N.W.2d 627 (1990) ........................... 24

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390, 37 L. Ed. 2d 669, 93 S. Ct. 2553 (1973) .......................... 30

*Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995) ....................................................................... 29

*Sequa Corp. v. Gbj Corp.*, 156 F.3d 136, 144 (2d Cir. N.Y. 1998) ...................... 29

*Sunward Corp. v. Dun & Bradstreet, Inc.*, 568 F. Supp. 602, 609 (D.C.Colo. 1983) ......................................................................... 31

*Swenson-Davis v. Martel*, 135 Mich. App. 632, 635 (1984) ............................... 17

*United States v. Local 1804-1*, 831 F. Supp. 167, 169 (S.D.N.Y. 1993) .............. 29

*United States v. Lockette*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004) .............. 28

*Weva Oil Corp. v. Belco Petroleum Corp.*, 68 F.R.D. 663 (N.D.W.Va.1975) .......................................................................... 26

Case: 12-1584    Document: 19    Filed: 09/11/2012    Page: 6

## Statutes

15 U.S.C. § 1125 ................................................................................ix

15 U.S.C. § 1525 ................................................................................ix

20 U.S.C. § 1232 ................................................................................ix

28 U.S.C. § 1291 ................................................................................ix

28 U.S.C. § 1331 ................................................................................ix

28 U.S.C. § 1332 ................................................................................ix

28 U.S.C. § 1367 ................................................................................ix

6th Cir. R. 26.1 ..................................................................................ii

8 Wright and Miller, Federal Practice and Procedure, § 2264 ................. 26

E.D. Mich. LR 7.1(d)(3)(A) ................................................................. 3

E.D. Mich. LR 7.1(h) ......................................................................... 28

Fed. R. App. Pro. 26.1 ........................................................................ii

Fed. R. Civ. P. 36 ............................................................. 10, 25, 26, 27

Fed. R. Civ. P. 11 ............................................................................... 2

Fed. R. Civ. P. 56 ........................................................... 15, 19, 29, 30

FRE 801 .......................................................................................... 19

FRE 802 .......................................................................................... 21

MCL 600.1405 ................................................................................. 22

MCL 600.2911(1) ............................................................................. 19

MCR 2.403(J)(4) .............................................................................. 21

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff American University of Antigua College of Medicine ("AUA") requests oral argument in this matter. The arguments presented in this matter involve the application and balancing of Defendant Steven Woodward's ("Woodward") First Amendment rights to speak with AUA's right not to be defamed. This is complicated by the doctrine of collateral estoppel as Woodward previously (and unsuccessfully) litigated claims against AUA in Michigan state courts. In light of Woodward's unrepresented status, oral argument may assist in the presentation of his claims.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which confers original jurisdiction on federal courts to hear federal questions. AUA's complaint sought relief for federal questions arising out of the Lanham Act, 15 U.S.C. § 1525, the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232 ("FERPA") and the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125 ("ACSCPA"). In addition, the district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between AUA and Woodward and the amount in controversy exceeded $75,000.00. The district court had supplemental jurisdiction over AUA's state law claims pursuant to 28 U.S.C. § 1367.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. On December 5, 2011, the District Court entered an opinion and order granting AUA's Motion for Partial Summary Judgment (R 184 and 185, granting R 143). Included in the relief granted was permanent injunctive relief. Woodward filed a motion for reconsideration on December 13, 2011 (R 188). Before this motion was decided, Woodward filed a Notice of Appeal with this Court (R 200).

On April 11, 2012, the District Court entered an order denying Woodward's motion for reconsideration (R 188) along with other post judgment motions he filed (R 206). Woodward sought that the District Court reconsider these decisions

Case: 12-1584    Document: 19    Filed: 09/11/2012    Page: 9

via a "Response" to the Order (R 211 and 212). The Court construed Woodward's filing as a motion for reconsideration and entered an order denying the same on May 2, 2012 (R 214).

On April 30, 2012, this Court entered an order dismissing Woodward's Appeal for lack of appellate jurisdiction in that the district court had not yet ruled on Woodward's motion for reconsideration. The District Court had, in fact, already ruled on the motion for reconsideration (R 206).

On June 5, 2012, the District Court entered a judgment granting AUA's Motion for Partial Summary Judgment (R 221). Woodward filed a timely Notice of Appeal from the Judgment on June 7, 2012 (R 222).

## STATEMENT OF ISSUES FOR REVIEW

I.    **DID THE DISTRICT COURT CORRECTLY RULE THAT WOODWARD'S WEBSITE CONTAINED DEFAMATORY STATEMENTS?**

The Trial Court says:    Yes
AUA says:    Yes
Woodward says:    No

II.    **DID THE DISTRICT COURT CORRECTLY ENTER A PERMANENT INJUNCTION WHERE IT CONCLUDED THAT WOODWARD'S STATEMENTS WERE DEFAMATORY?**

The Trial Court says:    Yes
AUA says:    Yes
Woodward says:    No

x

## STATEMENT OF THE CASE

This is a defamation action arising from Defendant Steven L. Woodward's ("Woodward") publication of the website www.aua-med.com[1]. On this website, Woodward published, as if true, a number of false statements, including that:

> AUA routinely commits fraud upon its students.
> AUA falsifies its students' grades.
> AUA breaches contracts.
> AUA conspires to commit fraud and violations of civil rights.
> AUA commits criminal activities reportable to the FBI.
> AUA colluded with St. Joseph Hospital to maliciously end [Woodward's] career.
> AUA committed perjury;

(See e.g. R 184). Plaintiff American University of Antigua College of Medicine ("AUA") filed its complaint on March 11, 2010 (R 1) and raised a number of causes of action against Woodward, including a count for defamation. *Id.*

AUA filed an initial motion for preliminary injunction on April 15, 2010 (R 8). Woodward responded (R 10 and 11) and the Court held oral argument on April 19, 2010 (R 19). At the hearing, Woodward agreed to remove his website and associated content pending resolution of this matter and replace it with an "under maintenance" or "under construction" message pending an adjudication on the merits. (R 19, see also R 37 at 4-5). Given Woodward's representations, the Court

---

[1] As noted *infra*, this website included embedded YouTube videos and other content. At times throughout the litigation, Woodward maintained other websites which published substantially the same content, including www.aua-vet.com.

deemed it unnecessary to enter a preliminary injunction and denied AUA's motion as moot. *Id.*

Woodward left the country in the summer of 2010 without filing an answer to AUA's complaint. As the time for responsive pleadings had lapsed, AUA requested that the Clerk enter a default. (R 13). The Clerk did so on July 15, 2010. (R 14). Sometime in or about July 2010, while in default, Woodward began republishing www.aua-med.com without leave of the Court. AUA sought Fed. R. Civ. P. 11 sanctions for Woodward's conduct in republishing his website and other misconduct including presenting liability defenses while in default. (R 32). On October 6, 2010, the Court denied AUA's motion for Fed. R. Civ. P. 11 sanctions and set aside the default. (R 37[2]).

In light of the continued publication of Woodward's website, AUA renewed its Motion for Preliminary Injunction on November 1, 2010. (R 45). Woodward responded (R 45) and AUA filed a reply (R 49). The Court denied AUA's motion without oral argument. (R 72[3]). The Court noted the strong presumption against prior restraints on speech and reserved the potential for an injunction following a final determination as to the false and libelous nature of Woodward's statements. *Id.*

---

[2] The Court also denied Woodward's Motions for Subpoenas (R 17, 18, 21, and 26), Motion to Dismiss (R 27) and his Motion for Preliminary Injunction (R 27).
[3] The Court also denied Woodward's Motion for Sanctions and to Dismiss. (R 51).

Following discovery, including the issuance of requests for admissions which Woodward did not timely respond to, AUA sought partial summary judgment (R 143) as to the defamatory nature of a number of Woodward's statements. Woodward responded (R 156[4]) and AUA replied (R 159). Oral argument on this motion was held on September 20, 2011 (R 204). At that hearing, Judge Duggan allowed Woodward to supplement the record with 12 pages of additional briefing, limited to his asserted defense of "truth" relative to his statements made regarding perjury, falsifying student grades breach of contract and crimes reportable to the FBI. (R 204 at 47). Defendant filed a 15 page response. (R 172). The Court permitted AUA to file a response and AUA did so on October 3, 2011. (R 173).

On December 5, 2011, the District Court granted AUA partial summary judgment and entered a permanent injunction. (R 184 and 185). On December 13, 2011, Woodward sought reconsideration of the Court's order granting partial summary judgment. (R188). On that same day, AUA filed a motion to show cause why Woodward should not be held in contempt for disregarding the permanent injunction and continuing to publish the enjoined statements on his website. (R 187).

---

[4] AUA notes that Defendant's 86 page response exceeded the 20 page limit imposed by ED MI LR 7.1(d)(3)(A).

3

The Court held hearing on the Motion to Show Cause on January 18, 2012. (R 199). This was the same date and time scheduled for a hearing to determine damages AUA sustained as a result of Woodward's publication of the defamatory statements. (R 185). At the hearing, Woodward refused to acknowledge that the prohibited statements remained on his website. (R 199 at 7 *et seq*; see also R 206 at 2-3). Eventually, Woodward agreed to completely remove his website as he determined that this was the only way to fully comply with the Court's order to remove the enjoined statements. *Id.* This rendered AUA's show cause motion moot. (R 206 at 5).

Based on Woodward's agreement to remove his website in its entirety, AUA's counsel indicated on the record that it would check with AUA regarding waiving the damages claim so long as Defendant chose not to appeal. (R 199 at 47 *et seq*). In light of the concurrent appellate proceedings, the Court requested AUA's expedited consideration of the same. (R 220).

On June 4, 2012, AUA indicated to the Court that, for pragmatic reasons, it was waiving its claim for money damages sustained. (R 220). AUA reserved its right to damages should Defendant violate the injunction in the future. *Id.* The Court entered a final judgment on June 5, 2012. (R 221).

As it pertains to this appeal, it must be noted that Woodward filed a number of motions prior to the entry of final judgment in this matter, but after partial

4

summary judgment had been granted. These motions include: a motion to assert counterclaims (R 193); a motion to strike the Court's Order[5] allowing AUA to respond to the Motion for Reconsideration (R 196); and an "emergency motion" for leave to file a motion to dismiss or to renew his previously denied motion to dismiss (R 198). Each of these motions was denied[6]. (R 206).

Woodward filed a "Response" to the Court's order denying the various post-summary judgment motions. (R 211 and 212). The Court deemed Woodward's "Response" as a motion for reconsideration and denied the same as untimely and failing to assert palpable error and merely re-raising prior arguments. (R 214).

This consolidated appeal follows.

## STATEMENT OF FACTS

AUA is a medical school based out of Antigua. Woodward was enrolled as a medical student until he was discharged. Woodward's discharge resulted from his failure to appear or contest disciplinary hearings which stemmed from his fifth semester rotations at St. Joseph Mercy Hospital in Oakland County.

Woodward brought suit against AUA and others in Oakland County Circuit Court (Case No. 2007-088103-CZ). The other defendants included Trinity Health-

---

[5] See R 192. AUA elected not to file a response.
[6] AUA filed a response as to the motion to assert counter claims only and Defendant filed a reply. (R 195 and 197).

Michigan d/b/a St. Joseph Mercy, the hospital where Woodward performed clinical rotations, and Susan Zonia, the director of its clinical program.  In this action, Woodward claimed (a) libel/slander; (b) intentional infliction of emotional distress; (c) tortious interference with contractual relationship; (d) invasion of privacy; and (d) breach of contract.  Exhibit A, *Steven Woodward v. American University of Antigua, et al*, decided January 13, 2011 (Docket No. 292172).

Ultimately all claims against Defendants were summarily dismissed. Woodward appealed as of right[7].  The Michigan Court of Appeals issued a unanimous decision affirming the trial court's judgment on January 13, 2011.  *Id*. Accordingly, the following facts have already been litigated and determined:

- Woodward's conduct at AUA was replete with instances of unprofessional behavior.  Exhibit A at 1-2.

- Woodward was a poor student, maintaining only a 1.5 grade-point average. Exhibit A at 2.

- AUA did not deny Woodward due process.  Exhibit A at 3.

- AUA had sufficient grounds to dismiss Woodward based on his "poor academic performance and unprofessional conduct." Exhibit A at 3.

- No express or implied contract existed between AUA and Woodward. Exhibit A at 3-4.

---

[7] The undersigned counsel represented all defendants in the appellate proceedings only.

- AUA did not invade Woodward's privacy. Exhibit A at 4.

- The statements in Zonia's memo were accurate and made in good faith. Exhibit A at 5.
- Neither Zonia nor Trinity tortuously interfered with Woodward's contract as none existed. Exhibit A at 6.

While Woodward could have sought review by Michigan's Supreme Court (see MCR 7.302), he elected not to do so.

At some point after his discharge from AUA, Woodward began publication of the website www.aua-med.com to express his apparent dissatisfaction with AUA. The main page of Woodward's website had the following "caution" about AUA:

> This site contains evidence about AUA:
> -Fraud
> -Falsifying Student Grades
> -Breach of Contract
> -Disregard for Student Civil Rights
> -Conspires Against Students
> - and other unethical practices by AUA and the hospitals they do business with.

R 143 at 9 and R 188. On this website, Woodward criticized AUA through a number of embedded videos. This video series was entitled: "A synopsis of unethical practices" and contained thirty-three videos narrated by Woodward, and included a number of false and defamatory statements. Woodward's site included an index of the videos giving his thumbnail synopsis of each. (R 143 at Exhibit C). By way of example, video 12 purports to include "evidence of [AUA's] conspiracy

7

to commit fraud, fraud, breach of contracts, and violations of Civil Rights." *Id.* at 2. Similarly, video 13 (titled "FBI and AUA") purports to demonstrate methods of reporting AUA's "criminal activities to the FBI". *Id.* at 3. Video 20 purports to include "examples of [AUA's] conspiracy, negligence, abuse of power, perjury, fraud, and breach of contract." *Id.* at 3-4. Video 20-9 alleges that AUA's agent Dr. Susan Zonia "contrived false evidence." *Id.* at 5-6. A number of Woodward's videos purported to demonstrate that "the true intent of the AUA/St Joseph Mercy Oakland Administration was to defraud me." *Id.* at 4-6. Video 30 (titled "Antigua Crime and AUA") contains "the truth about AUA's lies and connections with criminal activities on Antigua." *Id.* at 7. Video 31 was captioned "Student Warning" and in this video Defendant alleges that Antigua is full of rape, murder, fraud, and government corruption. *Id.* Woodward goes on to allege that AUA violates the Lanham Act and is guilty of the crime of reckless endangerment. See e.g. *Id.* at 7.

At issue in this appeal are Woodward's statements that:

- AUA routinely commits fraud upon its students.
- AUA falsifies its students' grades.
- AUA breaches contracts.
- AUA conspires to commit fraud and violations of civil rights.
- AUA commits criminal activities reportable to the FBI.
- AUA colluded with St. Joseph Hospital to maliciously end [Woodward's] career.
- AUA committed perjury

8

The publication of these statements was not disputed until the show cause hearing where Woodward took the position that these verbatim statements did not appear anywhere on his website. (R 199 at 6 *et seq*). To be sure, Woodward's own answer and responses to requests to admissions admitted making these statements. (R 40 at ¶21 and R 188 at Exhibit 9). Woodward published these statements continuously from the time AUA filed suit in March 2010 (R 1) to the hearing on AUA's initial Motion for Preliminary Injunction (R 8) on April 19, 2010 (R 19) at which point he agreed to place his website "under construction" or "under maintenance". He began republishing his website sometime in or around July 2010 and continued publication through the January 18, 2012 show cause hearing (R 199).

It is also evident that Woodward's website was seen by third-parties. Comments to his YouTube channel (which hosted the embedded videos) evidence this. (R 143 at p15[8]). A number of comments were left on this channel before Woodward disabled this feature. Similarly, Woodward testified at his deposition that his website had approximately 5,000 to 6,000 visits. (R 143 at Exhibit E at

---

[8] The referenced hyperlink is no longer active as Woodward's website and YouTube content is now private.

9

p113).  AUA appended to its Motion for Summary Judgment an affidavit of its president Neal Simon to evidence AUA's reputational damage. (R 171[9]).

AUA filed its complaint on March 11, 2010 (R 1) and included a claim of defamation.  *Id.*  This litigation ensued.  As noted above, Woodward defaulted when he failed to respond to the complaint.  (R 13).  Discovery began in earnest on October 6, 2010, when the Court set aside the default. (R 37).

During discovery, on November 8, 2010, in order to narrow the issues in dispute, AUA served Requests for Admissions pursuant to Fed. R. Civ. P. 36.  The request sought admission of some elements of AUA's defamation claims:

> a.  Made a number of defamatory statements.  (Requests 14 through 25 and 28 through 36).
> b.  Those statements were false (Request 37).
> c.  They were published to third parties.  (Requests 9 and 10).
> d.  That he lacked consent or license from AUA to make the statements (Request 39)

R 143 at Exhibit D.  Woodward did not serve responses within the 30 days allowed under Fed. R. Civ. P.  36(a)(3) and thus conclusively admitted all the requests.  Woodward eventually served responses, but not until March 24, 2011, but did so without leave of the court to withdraw the admissions that had been conclusively established by his failure to respond. (R 188 at Exhibit 9[10]).

---

[9] An unsigned copy was appended to the motion as Exhibit H.  The signed copy was filed on September 16, 2011 at R 171.

[10] Woodward did not file these responses until he was seeking reconsideration.

At the hearing on AUA's motion for summary judgment, Judge Duggan questioned Woodward about his failure to serve responses to requests for admissions. (R 204 at 13 *et seq*). Eventually Woodward conceded his failure:

> THE COURT: You didn't submit the responses to request for admissions as required by the rule, did you?
> MR. WOODWARD: I did not.
> \*\*\*
> THE COURT: You haven't told me yet why you didn't respond to the request for admissions on time.
> MR. WOODWARD: Because he was deleting information off of his website.
> THE COURT: The request for admissions were very precise. You had the ability to answer them.
> MR. WOODWARD: And I had a motion for dismissal out there also.
> THE COURT: You had an ability to answer them and you chose not to.
> MR. WOODWARD: If that's how you want to see it, that's how you see it. I see it totally different.
> THE COURT: That's how I have to deal with it then.

R 204 at 19, 29-30.  Indeed, Woodward also admitted that he could have responded to the requests but instead relied upon a motion for protective order to negate his obligation to respond.  *Id.* at 20-21[11].  However, Woodward sought this motion

---

[11] Woodward filed three Motions for Protective Order.  The first (R 43) was filed on October 27, 2010 and was denied as moot in light of the Court's extension of discovery (R 44). The second (R 53) was filed on November 10, 2010 and was stricken as improperly combined with another motion (R 54).  The third (R 56) was filed on November 19, 2010 and was heard and denied on December 22, 2010, though an order was not entered until after the holidays on January 5, 2011 (R 88).

"for the purposes of protecting evidence" from AUA's spoliation/destruction. (R 56 at 2).

Even assuming the Court improperly denied Woodward's request to withdraw his admissions (R 184 at 22), Woodward's untimely responses admitted the following:

> **REQUEST 13:** Please admit that the statements made on your website are intended to be factual. **RESPONSE: Deny[12], The statements made on www.aua-med.com are factual to the best of the Defendant's knowledge.**

> **REQUEST 14:** Please admit that you published statements that AUA routinely commits fraud upon its students; **RESPONSE: Admit**

> **REQUEST 15:** Please admit that you published statements that AUA falsifies its students' grades; **RESPONSE: Admit**

> **REQUEST 16:** Please admit that you published statements that AUA breaches contracts; **RESPONSE: Admit**

> **REQUEST 17:** Please admit that you published statements that AUA disregards student civil rights; **RESPONSE: Admit**

> **REQUEST 24:** Please admit that you published statements that AUA conspires to commit fraud and violations of civil rights; **RESPONSE: Object Compound Statement[13]**

> **REQUEST 25:** Please admit that you published statements that AUA commits criminal activities reportable to the FBI. **RESPONSE: Admit**

---

[12] Woodward's use of the word "deny" is at odds with his explanation that the statements are indeed factual. Accordingly, this is actually an admission that the published statements are assertions of fact.

[13] As described below, this is not a proper objection.

**REQUEST 30:** Please admit that you published statements that AUA colluded with St. Joseph Hospital to maliciously end your career. **RESPONSE: Admit**

**REQUEST 33:** Please admit that you published statements that AUA committed perjury. **RESPONSE: Admit.**

**REQUEST 37:** If you admitted that you published any of the statements outlined in Requests 14 through 25 and 28 through 36, <u>for each</u>, please admit that you knew the statements were false when published. **RESPONSE: Object Compound Statement.**

*See*, e.g., R 143-5 and R 188.

As Woodward's brief on appeal devotes much attention to perceived discovery abuses, a modicum of discussion of the discovery and motion practice in this matter is appropriate. As Woodward was not represented[14], he was difficult to deal with in discovery and lacked knowledge of his obligations or the concept of legal relevance. The Court was very patient with Woodward and did not issue a single cent of costs, despite conduct meriting sanctions on multiple occasions. Suffice to say, AUA fully complied with its discovery obligations in this matter. This is fully borne out by the record and the multiple hearings conducted by both the District and Magistrate Judges. Woodward's various motions for discovery sanctions were properly denied. The abuse of discretion standard is satisfied.

---

[14] Save for approximately three weeks in July and August 2011, when the Court appointed pro bono counsel who Woodward promptly discharged for perceived conflicts of interest. *See* R 160-161 (Orders Appointing Pro Bono Counsel), R 162 (Woodward's response to Order of Assignment of counsel) and R 164 (Order Terminating Counsel following Hearing on the same).

Additional facts will be supplied throughout this brief as necessary.

Case: 12-1584     Document: 19     Filed: 09/11/2012     Page: 24

## STATEMENT OF STANDARD OF REVIEW

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must construe the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct 1348, 89 L.Ed. 2d 538 (1986). In reviewing a motion for summary judgment, the Court determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d (1986). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson, supra* at 247-48. Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment, . . . upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

15

on which that party will bear the burden of proof at trial. *Celotex Corp., v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

"The appellate court in defamation cases has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *Compuware Corp. v. Moody's Investors Servs.*, 499 F.3d 520, 525-526 (6th Cir. Mich., 2007)(internal quotations removed), citing *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499, 104 S. Ct. 1949, 80 L. Ed. 2d 50 (1984.)

## SUMMARY OF ARGUMENT

The district court correctly ruled that Woodward's website contained defamatory statements and properly enjoined his publication of the same.

## ARGUMENT

### I.    The District Court Properly Concluded that Woodward's Statements were Defamatory

#### A.    *Overview*

In defamation cases, the Court is tasked with balancing a Defendant's First Amendment right to speak and express himself freely with a Plaintiff's right not to be defamed.  Here the Court struck the appropriate balance and granted AUA's Motion for Partial Summary Judgment as to a number of statements on the grounds that Woodward had already been afforded a full and fair opportunity to litigate

16

those issues and conclusively admitted the same. As the statements concerned AUA, were false, and published with malice, the District Court properly granted AUA partial summary judgment. Accordingly, an order affirming the District Court's ruling is appropriate.

## B. *Woodward Defamed AUA*

While the First Amendment protects speech and free expression, this right is not absolute. The tort of defamation prevents a declarant from publishing false statements about a plaintiff.

To establish a claim for defamation[15], AUA "must establish each of the following four elements: "(a) a false and defamatory statement concerning plaintiff; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm, (defamation per se) or the existence of special harm caused by the publication (defamation per quod)." *Campbell v. Bank One*, 79 Fed. App. 760, 762 (6th Cir. Mich. 2003).

A communication is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Swenson-Davis v. Martel*, 135

---

[15] A corporation such as AUA may be defamed. See e.g. *Heritage Optical Center, Inc. v. Levine*, 137 Mich. App. 793, 797; 359 N.W.2d 210 (1984).

17

Case: 12-1584     Document: 19     Filed: 09/11/2012     Page: 27

Mich. App. 632, 635 (1984) citing *Nuyen v. Slater*, 372 Mich. 654; 127 N.W.2d 369 (1964).    Similarly, an imputation of dishonesty or fraud is defamatory. *Community for Creative Non-Violence v. Pierce*, 814 F.2d 663, 671 (D.C. Cir., 1987), citing *Hoffman v. Washington Post Co.*, 433 F. Supp. 600 (D.D.C. 1977).

Here AUA's Motion for Partial Summary Judgment laid out the following statements (among others) as actionable:

- AUA routinely commits fraud upon its students.
- AUA falsifies its students' grades.
- AUA breaches contracts.
- AUA conspires to commit fraud and violations of civil rights.
- AUA commits criminal activities reportable to the FBI.
- AUA colluded with St. Joseph Hospital to maliciously end [Woodward's] career.
- AUA committed perjury

Woodward did not seriously dispute the publication of these statements or the fact that he had no license from AUA to publish the same.    AUA put forth proofs that the statements were false (R 143, 159 and 173), both through Woodward's own admissions (and lack thereof) and through the state court record.    Woodward either knew the statements were false when made or did so with reckless disregard for their falsity[16].    Similarly, AUA put forth proofs that it sustained damages through the affidavit of Neal Simon (R 171) and through the *per se* defamatory nature of

---

[16]    See below regarding discussion of Woodward's evidence of alleged crimes/transgressions that occurred <u>after</u> his publication of the statements.

18

the allegations of criminal conduct[17]. The Court had an ample record to grant AUA's motion.

## C. _Woodward's Response Failed to Demonstrate any Factual Issues_

Woodward responded to AUA's Motion for Partial Summary Judgment (R 156). However, instead of citing to particular parts of the record to demonstrate a genuinely disputed fact as required by Fed. R. Civ. P. 56(c)(1)(A), Woodward only appended inadmissible evidence to his response. Woodward attached as exhibits newspaper articles for the truth of the matters stated therein—inadmissible hearsay under FRE 801. Similarly, Woodward appended various internet search results, also hearsay. AUA's reply brief included an appendix which concisely detailed Woodward's inadmissible documentary evidence. (R 159 at Appendix A).

Consequently, Woodward did not generate the existence of any disputed material fact and essentially conceded summary judgment. Fed. R. Civ. P. 56(c)(1)(B) provides that a position is factually supported if an "adverse party cannot produce admissible evidence to support the fact." Here Woodward could

---

[17] See e.g. _Heritage Optical Center, Inc. v. Levine_, 137 Mich. App. 793, 798; 359 N.W.2d 210 (1984) citing _Diplomat Electric, Inc v Westinghouse Electric Supply Co_, 378 F2d 377, 383 (5th Cir., 1967) (holding that where "a libel contains an imputation upon a corporation in respect to its business, its ability to do business, and its methods of doing business, the same becomes libelous per se."). Similarly, the "uttering or publishing of words imputing the commission of a criminal offense" are _per se_ defamatory under Michigan's statute governing libel and slander. MCL 600.2911(1).

not produce any admissible evidence to support his statements as true[18] and the court appropriately noted his dearth of admissible evidence. (R 184 at 22).As there was no genuine dispute as to any material fact and the trial court properly granted AUA's motion for partial summary judgment.

## D.    *Woodward Had No Evidence of Truth*

The District Court gave Woodward ample opportunity to cure his deficiencies and allowed him an opportunity to supplement the record with evidence of the truth of his claims that: AUA committed perjury; AUA falsifies student grades; AUA breaches contracts; and AUA commits criminal activities reportable to the FBI. (R 204 at 46). Woodward did so on September 26, 2011. (R 172[19]). AUA responded. (R 173). As Woodward failed to put forth any admissible evidence to support his claims, the Court's grant of partial summary judgment was appropriate. (R 184 at 22).

**Perjury.** Woodward endeavored to demonstrate four instances of perjury, however none were sufficient. The first claimed instance was the verification accompanying AUA's complaint (R1). However, even if false, this could not give truth to his statement which was made <u>before</u> AUA brought suit. The second and third instances were opinions of the Court of Appeals and Oakland County Circuit

---

[18] Woodward never filed affirmative defenses, but throughout this litigation challenged the "falsity" element of AUA's defamation claim. (See e.g. R 40).

[19] AUA notes that Woodward's 15 page response exceeded the 12 page leave granted by the Court.

Courts. AUA did not author these documents and thus cannot be liable for their contents. The fourth was alleged instances of perjury in the Circuit Court pleadings. However, these documents were not sworn or under oath[20]. As such, Woodward had no evidence of AUA committing perjury and the District Court properly found this statement defamatory.

**Falsifying Student Grades**. Woodward attempted to prove that AUA falsified student grades. However, he presented no admissible evidence of this and instead presented his own "calculations" and grade documentation. Taken for their truth, they amount only to hearsay. FRE 802. As discussed above, Defendant is estopped from contesting the fact that he was a poor student. See Exhibit A at 2. Similarly Defendant is estopped from contesting the fact that he failed out of AUA for a combination of his unprofessional conduct and poor grades. *Id* at 3. As Woodward had no evidence of falsification of student grades, partial summary judgment was appropriate.

**Breach of Contract.** Woodward could not establish that AUA breaches contracts. As discussed below, the Michigan Court of Appeals has already considered the issue and determined that Woodward had **no valid express or implied contract with AUA**. *Id.* at 3-4. While Woodward also references the AUA-Trinity Health System contract, he was not a party to that contract and did

---

[20] In fact, one of the alleged pleadings was a case evaluation summary, inadmissible under Michigan's Court Rules. MCR 2.403(J)(4).

not provide any evidence to demonstrate that he would be entitled to enforce this contract as a third-party beneficiary. MCL 600.1405[21]. Woodward had no evidence of any contract breach and this statement was properly determined to be defamatory.

**Crimes Reportable to the FBI**. Woodward's conspiracy theories run deep. Indeed, his only proffered evidence was of a "loan financing scheme" that he uncovered some seven months into this litigation. This cannot be the basis for his prior publication of statements accusing AUA of federal criminal activity. Furthermore, he established nothing remotely criminal about how AUA processes its student loans.

As Woodward presented no evidence of any crimes reportable to the FBI and this statement was properly determined to be defamatory.

**D.** ***Woodward is Collaterally Estopped from Challenging the Falsity of His Statements***

Assuming Woodward's response had submitted admissible evidence to dispute the falsity of his statements, he was properly collaterally estopped from

---

[21] Under this statute, Woodward would need to prove that AUA contracted <u>directly</u> for his behalf. See e.g. in *Brunsell v. City of Zeeland*, 467 Mich. 293; 651 N.W.2d 388 (2002) (describing incidental beneficiaries' inability to enforce a contract). Assuming his entitlement to enforce that contract, Woodwards alleged breaches run to Trinity and <u>not AUA</u>. E.g. Woodward's allegation that <u>the hospital failed</u> to provide mental health/counseling support services.

doing so.  As noted above, Woodward previously brought suit against AUA and others in Oakland County Circuit Court.  His claims were summarily dismissed. He appealed and the dismissal was affirmed.  He did not exhaust his appellate rights and did not appeal to the Michigan Supreme Court.

As a result of the prior suit (which was concluded by the Circuit Court before this litigation began[22]), a number of issues had already been conclusively determined.  Woodward's breach of contract claim had failed.  Woodward thus had no basis to claim that AUA breached its contract with Woodward.  Indeed, the Court of Appeals affirmed and held that no express or implied contract ever existed between AUA and Woodward.  Exhibit A at 3-4.  Similarly, Woodward's claim of tortious interference with contract failed.  *Id.* at 5.  Woodward's claim of invasion of privacy had failed.  *Id.* at 4.  This was despite AUA affording Woodward due process.  *Id.* at 3.  Accordingly his statement that AUA conspires to violate student civil rights was unfounded and false.  Woodward's statement that AUA colluded with St. Joseph Hospital to maliciously end his career was similarly false.  Instead, the Court of Appeals affirmed the trial court in its findings that Woodward's conduct at AUA was replete with instances of unprofessional behavior and that AUA had sufficient grounds to dismiss him based on this "poor academic

---

[22] The Court of Appeals did not issue its ruling until January 13, 2011, after this litigation had ensued.

performance and unprofessional conduct." *Id.* at 1-3[23]. Similarly, the memo authored by Susan Zonia was accurate and made in good faith. *Id.* at 5. Accordingly, his assertion of a conspiracy to end his career is false.

Here the District Court applied the doctrine of collateral estoppel to preclude Woodward from contesting the falsity of his actionable statements. (R 184 at 22). Indeed, "The doctrine of collateral estoppel precludes relitigation of an issue in a different, subsequent action between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding." *Dearborn Heights Sch Dist No 7 v. Wayne County MEA/NEA*, 233 Mich. App. 120, 124; 592 N.W.2d 408 (1998) citing *People v. Gates*, 434 Mich. 146, 154; 452 N.W.2d 627 (1990). "The doctrine is intended to relieve parties of multiple litigation, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* citing *Detroit v. Qualls*, 434 Mich. 340; 454 N.W.2d 374 (1990). "Collateral estoppel bars relitigation of issues where the parties had a full and fair opportunity to litigate those issues in an earlier action." *Id.*, citing *Arim v General Motors Corp.* 206 Mich. App. 178, 195; 520 N.W.2d 695 (1994).

Here Woodward and AUA were both parties to the Oakland Circuit Court case and subsequent appeal to the Michigan Court of Appeals. Woodward had

---

[23] Woodward was a poor student, maintaining only a 1.5 grade-point average. *Id.* at 2.

ample opportunity to contest these issues both at the Circuit Court and Appellate Court levels. He failed to present facts sufficient to rebut these findings. The Court of Appeals has conclusively determined these facts and these facts apply to the instant dispute between the parties.

Consequently, some of Woodward's statements were properly determined defamatory as a matter of law in light of the application of the doctrine of collateral estoppel:

a.   AUA breaches contracts;
b.   AUA conspires to commit fraud and violations of civil rights;
c.   AUA routinely commits fraud upon its students;
d.   AUA falsifies its students grades;
e.   AUA colluded with St. Joseph Hospital to maliciously end Mr. Woodward's career; and
f.   AUA committed perjury

As the District Court properly applied the doctrine of collateral estoppel, an order affirming the grant of partial summary judgment is appropriate.


**E.   _Woodward Failed to Answer Requests to Admit_**

Woodward did not timely answer requests to admit, deeming a number of matters admitted by default. Fed. R. Civ. P. 36(a)(3). These requests included requests that he admit to the publication of a number of statements intended to be factual and that he knew the statements were false when made. (R 143-5 and R188 at Requests 13-25, 28-37).

Case law is clear that where admissions made under Fed. R. Civ. P. 36 are dispositive of the case, summary judgment is appropriate. *EEOC v. Baby Products Co.*, 89 F.R.D. 129, 131 (E.D. Mich., 1981) citing *Weva Oil Corp. v. Belco Petroleum Corp.*, 68 F.R.D. 663 (N.D.W.Va.1975) and 8 Wright and Miller, Federal Practice and Procedure, § 2264. Here the requests set forth the required elements of publication of defamatory statements and falsity. As noted above, Woodward's statements were *per se* defamatory when alleging criminal conduct or the manner in which AUA conducts its business. Reputational damages were also substantiated by Neal Simon's affidavit (R 171).

The underlying purpose of deeming requests admitted is to narrow the issues for trial, thus expediting the same. See *In re Heritage Bond Litig.*, 220 F.R.D. 624, 626 (C.D. Cal., 2004) citing *Asea, Inc. v. Southern Pacific Transportation Co.*, 669 F.2d 1242, 1245 (9th Cir., 1982). The purpose of the rule is satisfied in deeming Woodward to have admitted the requests.

The Court concluded that Woodward's responses would not promote the presentation of the merits in light of the collateral estoppel/res judicata issues and would serve to prejudice AUA. (R 184 at 22). Accordingly, pursuant to Fed. R. Civ. P. 36(b), the Court properly disallowed amendment/withdrawal of the admissions.

Even if Woodward was entitled to withdraw his admissions, his untimely responses admit a number of statements and do not change the analysis or outcome. To be sure, Woodward expressly admitted:

- That the statements made on www.aua-med.com are intended to be factual. (Request 13)
- That he published statements that AUA routinely commits fraud upon its students (Request 14)
- That he published statements that AUA falsifies student grades (Request 15)
- That he published statements that AUA breaches contracts (Request 16)
- That he published statements that AUA disregards student civil rights (Request 17)
- That he published statements that AUA conspires to commit fraud and violations of civil rights (Request 24[24])
- That he published statements that AUA commits criminal activities reportable to the FBI (Request 25)
- That he published statements that AUA colluded with St. Joseph Hospital to maliciously end [his] career. (Request 30)
- That he published statements that AUA committed perjury. (Request 33).

R 143-5 and R188. These responses admit facts sufficient for summary judgment. Accordingly, based on Woodward's own admissions, partial summary judgment was proper.

---

[24] Woodward objected to this request as a "compound statement." This is not a sufficient objection under Fed. R. Civ. P. 36(a)(5). Instead, Woodward was required to "specifically deny [the request] or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer of deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4). Woodward could easily have separated the "fraud" and "civil rights" conspiracies to answer the request.

## F. *The District Court's Denial of Reconsideration was Appropriate*

The District Court assessed Woodward's Motion for Reconsideration (R 188) under Eastern District of Michigan's Local Rule 7.1(h) and properly determined that Woodward merely presented the same arguments (R 206). E.D. Mich. LR 7.1(h) provides in relevant part:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a **palpable defect** by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that **correcting the defect will result in a different disposition of the case**.

Emphasis supplied. A "palpable defect" is "a defect that is obvious, clear, unmistakable, manifest or plain." *United States v. Lockette*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004).

Woodward failed to allege a palpable defect by which the Court has been misled. In fact, he apparently concedes that the requests for admissions that the Court deemed admitted were in fact true and properly admitted. (R 188 at 6-7.) Woodward presented no facts, law or argument to suggest that somehow the Michigan Court of Appeals' ruling in *Steven Woodward v. American University of Antigua, et al* was in error. In fact, he took no action to appeal that ruling or to have it set aside. Consequently, he had no grounds to contest the application of the doctrines of *res judicata* and collateral estoppel in the present matter. Similarly,

28

Case: 12-1584    Document: 19    Filed: 09/11/2012    Page: 38

Woodward failed to assert that correction of the alleged defect would result in a different ultimate disposition of the matter. (R 188.) In fact, each of the arguments he advances were not outcome determinative.

The Court could have also assessed Woodward's motion under Fed. R. Civ. P. 59(e) as a Motion to Alter or Amend Judgment and would have reached the same conclusion. A motion under Fed. R. Civ. P. 59(e) is reviewed for an abuse of discretion. *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 467 (6th Cir., 2009). A Fed. R. Civ. P. 59(e) motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a "second bite at the apple"" *Sequa Corp. v. Gbj Corp.*, 156 F.3d 136, 144 (2d Cir. N.Y. 1998) quoting *United States v. Local 1804-1*, 831 F. Supp. 167, 169 (S.D.N.Y. 1993). In order for the court to properly grant a motion for reconsideration under Fed. R. Civ. P. 59(e), there must be "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Betts*, *supra* at 474 citing *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006). "A motion to alter or reconsider a judgment is an extraordinary remedy and should be granted sparingly." *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995).

Assessing Woodward's Motion for Reconsideration under Fed. R. Civ. P. 59(e) yields the same results. His motion presented no clear errors of law, newly discovered evidence, intervening change in controlling law or need to prevent a manifest injustice. Instead, he sought a "second bite at the apple" and the District Court properly denied his Motion (R 206).

## II.     The District Court Properly Entered a Permanent Injunction

After adjudicating Woodward's statements as defamatory, the District Court considered AUA's prayer for injunctive relief and granted the same. (R 184-185)

Traditionally, "equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages." *Lothschuetz v. Carpenter*, 898 F.2d 1200, 1206 (6th Cir. Ohio 1990) citing *Community for Creative Non-Violence v. Pierce*, 259 U.S. App. D.C. 134, 814 F.2d 663, 672 (D.C.Cir. 1987). This court, in *Lothschuetz*, recognized the appropriateness of "a narrow and limited injunction to prohibit [the defendant] from continuing and reiterating the same libelous and defamatory charges" *Id.* at 1208-09 (Wellford, J., for the court, concurring in part). Indeed, the Court found it necessary to protect the Plaintiff from future injury to its reputation and business relations from statements already adjudicated to be false and libelous. *Id.* citing *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390, 37 L. Ed. 2d 669, 93 S. Ct. 2553 (1973); and

30

*Sunward Corp. v. Dun & Bradstreet, Inc.*, 568 F. Supp. 602, 609 (D.C.Colo. 1983).
See also *Lassiter v. Lassiter*, 456 F. Supp. 2d 876 (E.D. Ky. 2006), *aff'd*, 280 F. App'x 503 (6th Cir. 2008) (where narrowly drawn injunctive relief was approved as a remedy to adjudicated false statements).

Here the Court's injunction was "clearly and narrowly drawn so as not to prohibit [Woodward's] protected expression." *Id.* at 884. The Court's injunction prohibited Woodward "from publishing on the Internet or by any other means or medium the following statements:

> AUA routinely commits fraud upon its students.
> AUA falsifies its students' grades.
> AUA breaches contracts.
> AUA conspires to commit fraud and violations of civil rights.
> AUA commits criminal activities reportable to the FBI.
> AUA colluded with St. Joseph Hospital to maliciously end [Woodward's] career.
> AUA committed perjury;"

R 185. Prohibiting Woodward's future publication of seven defamatory statements is a narrowly tailored remedy that does not infringe upon any of Woodward's constitutionally protected speech rights.

It was Woodward who stipulated and agreed to withdraw his whole website. (R 199 at 40-42). Woodward contends that he cannot separate his protected opinion speech from the defamatory statements and that wholesale removal is his only way to comply with the Court's order. *Id.*

As Woodward is indigent, the likelihood of him ever satisfying a money judgment are minimal, the District Court's narrowly drawn injunction is an appropriate remedy to prevent AUA from suffering past, present, and future damages arising from Woodward's republication of the seven adjudicated false statements. Moreover, given Woodward's willingness and ability to take his defamatory statements off the Internet, only to later republish them, a narrowly drawn injunction is essential to providing AUA any meaningful relief at all. Accordingly, for all these reasons, AUA respectfully requests that this Honorable Court affirm the District Court's rulings entered below.

## CONCLUSION & RELIEF REQUESTED

The district court correctly granted Plaintiff's motion for summary judgment and enjoined Defendant's publication of defamatory materials. Plaintiff respectfully requests that this Honorable Court affirm the district court's rulings.

s/ Eric A. Buikema (P58379)
Eric A. Buikema (P58379)
Cardelli, Lanfear & Buikema, P.C.
322 West Lincoln Avenue
Royal Oak, Michigan 48067
(248) 544-1100
ebuikema@cardellilaw.com

# ADDENDUM: DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| *Record #* | *Brief Description* |
|---|---|
| 143 | AUA's Motion for Partial Summary Judgment |
| 156 | Woodward's Response in Opposition to AUA's Motion for Partial Summary Judgment |
| 159 | AUA's Reply in Support of Motion for Partial Summary Judgment |
| 171 | Supplement to AUA's Motion for Partial Summary Judgment— Affidavit of Neal Simon |
| 172 | Woodward's Reply in Opposition to Motion for Partial Summary Judgment |
| 173 | AUA's Response to Woodward's Reply (R 172) |
| 184 | Opinion and Order Granting AUA's Motion for Partial Summary Judgment  (R 143) |
| 185 | Order Granting AUA's Motion for Partial Summary Judgment (R 143) |
| 188 | Woodward's Motion for Reconsideration (R 184) |
| 200 | Woodward's Notice of Appeal (R 185) |
| 204 | Transcript of Motion for Partial Summary Judgment (R 143)(Hearing: September 20, 2011) |
| 206 | Opinion and Order Denying Motion for Reconsideration (R188) |
| 211-212 | Woodward's Responses to R 206 |
| 213 | Order from Court of Appeals Dismissing Appeal for Lack of Jurisdiction |
| 214 | Opinion and Order Denying R 211 |
| 216 | Notice of Appeal of R 214 |
| 218 | Notice of Appeal of Order Granting Partial Summary Judgment (R 185) |
| 221 | Judgment |
| 222 | Notice of Appeal of Judgment (R 221). |

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the forgoing brief complies with the type-volume limitation provided in Fed. R. App. P. 32(a)(7) because it contains 7,699 words excluding those parts exempted by Fed. R. App. P 32(a)(7)(B)(iii).  The foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in *Microsoft Word* with a proportionally spaced typeface using Times New Roman (14-point) proportional type.

<u>s/  Eric A. Buikema (P58379)</u>
Eric A. Buikema (P58379)
Cardelli, Lanfear & Buikema, P.C.
322 West Lincoln Avenue
Royal Oak, Michigan 48067
(248) 544-1100
<u>ebuikema@cardellilaw.com</u>

Case: 12-1584    Document: 19    Filed: 09/11/2012    Page: 45

# EXHIBIT

# A

Case: 12-1584　　Document: 19　　Filed: 09/11/2012　　Page: 46

# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN WOODWARD,

      Plaintiff-Appellant,

v

TRINITY HEALTH-MICHIGAN, SUSAN
CATHERINE ZONIA and AMERICAN
UNIVERSITY OF ANTIGUA COLLEGE OF
MEDICINE,

      Defendants-Appellees.

UNPUBLISHED
January 13, 2011

No. 292172
Oakland Circuit Court
LC No. 2007-088103-CZ

Before: GLEICHER, P.J., and ZAHRA and K.F. KELLY, JJ.

PER CURIAM.

Steven Woodward appeals as of right the trial court's grant of summary disposition to
Trinity Health-Michigan, Susan Catherine Zonia, and the American University of Antigua
College of Medicine (AUA). We affirm.

Woodward was a medical student in his fifth semester of study at AUA. As part of the
medical school program, AUA placed Woodward in a clinical experience rotation at St. Joseph
Mercy Oakland Hospital (SJMO), which is owned and operated by Trinity Health-Michigan
(Trinity). Zonia served as the director of medical education at SJMO, and as a dean for AUA's
program at that site. Zonia's duties included oversight of AUA's fifth semester program at
SJMO, and the evaluation of student performance. This lawsuit arises from a memorandum
authored by Zonia and forwarded to Dr. Ernesto Calderon, an AUA administrator, at Calderon's
request. The memorandum described concerns regarding Woodward's demeanor and
unprofessional conduct while at SJMO, stating in pertinent part:

> Mr. Woodward's lack of professionalism and poor communication skills are a
> source of great concern. We do not feel that he will be a good ambassador for
> AUA, our hospital, or the profession he is to enter. We encourage the faculty at
> AUA to review his entire record, to determine if he does not meet the
> qualifications to sit for the boards, and begin clinical rotations.

The record documents numerous specific examples of Woodward's inappropriate
conduct while at SJMO, including his demonstrated resentment of assignments, his completion
of 100 patient logs in a mere two-week period accompanied by an indication that he did not wish

to participate further in the program, statements that the program constituted a waste of time and that he wished to transfer, "sabotaging exams," use of inappropriate language and passwords in communications with AUA, and general lack of respect and disruptive behavior while in classroom settings. Before participating in the SJMO program, Woodward had been placed on non-academic probation at AUA for unprofessional conduct. Woodward's academic performance was also tenuous, as he maintained only a 1.5 grade-point average. Ultimately, AUA initiated proceedings before its grievance and disciplinary committee, and Woodward was dismissed from the medical school. Despite receiving notice of the hearing and having an option to appeal the grievance and disciplinary committee's dismissal recommendation, Woodward elected to not attend the hearing or to pursue any administrative remedies.

Woodward filed a complaint against AUA, setting forth claims for breach of contract and an unspecified invasion of privacy. Additionally, Woodward's complaint asserted claims against Trinity and Zonia for libel per se, intentional infliction of emotional distress based on the alleged libel, and tortious interference with a contractual relationship. AUA filed a motion for summary disposition pursuant to MCR 2.116(C)(8), contending that Woodward had failed to state a claim on which relief could be granted. The trial court granted AUA's subrule (C)(8) motion, rejecting Woodward's contract claim. The trial court also dismissed Woodward's invasion of privacy claim against AUA, finding that Zonia's memorandum had not been publically published. Although the trial court afforded Woodward an opportunity to amend his complaint, he failed to timely submit an amended complaint to the court, or to serve it.

Following discovery, Zonia and Trinity sought summary disposition in accordance with MCR 2.116(C)(10), contending that no genuine issue of material fact existed concerning any of Woodward's remaining claims. The trial court granted defendants' motion, and Woodward now appeals.

This Court reviews de novo the grant or denial of summary disposition. *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). A motion brought in accordance with MCR 2.116(C)(8) tests the legal sufficiency of the pleadings, which are considered alone and without any additional evidence. *Johnson-McIntosh v Detroit*, 266 Mich App 318, 322; 701 NW2d 179 (2005); MCR 2.116(G)(5). In contrast, a motion brought in accordance with MCR 2.116(C)(10) tests the factual support for a claim and is to be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *The Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 56; 744 NW2d 174 (2007). "A genuine issue of material fact exists when the record, after drawing all reasonable inferences in favor of the nonmoving party, leaves open an issue on which reasonable minds could differ." *Id.*

Woodward first contends that because defendants failed to plead affirmative defenses, the trial court erred by granting summary disposition in their favor. We find this argument utterly without merit. Fundamentally, Woodward misapprehends the procedural distinction between motions for summary disposition and the pleading of affirmative defenses. Contrary to his allegations on appeal, the trial court granted summary disposition based on Woodward's failure to state a viable claim against AUA, and the absence of a genuine issue of material fact with regard to the claims pertaining to Trinity and Zonia. The failure of these defendants to plead various affirmative defenses did not shift the burden of proof, and lacked any relevance to the disposition of Woodward's claims. This Court has explained:

[A]n affirmative defense does not controvert the plaintiff's establishing a prima facie case, but . . . denies that the plaintiff is entitled to recover on the claim for some reason not disclosed in the plaintiff's pleadings . . . . [A]n affirmative defense presumes liability by definition. [*Citizens Ins Co of America v Juno Lighting, Inc*, 247 Mich App 236, 241; 635 NW2d 379 (2001) (internal quotation marks and citations omitted).]

Defendants' premised their motions for summary disposition on the inadequacy of Woodward's pleadings and his failure to establish a factual predicate for his claims. Zonia and AUA never conceded Woodward's establishment of a prima facie case for any cause of action pleaded in his complaint. Accordingly, we reject Woodward's claim that unpleaded affirmative defenses barred summary disposition in this case.

Woodward next challenges summary disposition of his claims for breach of contract and an unspecified violation of his privacy. Although Woodward now asserts that his breach of contract action against AUA was based on the student handbook, his pleadings in the trial court belie this argument. Woodward premised his breach of contract claim solely on his payment of tuition, and failed to preserve any argument based on the student handbook. Consequently, we decline to consider this alternative theory on appeal. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). Similarly, Woodward neither pled nor preserved a due process claim. *Id.*

Despite the deficiency of Woodward's pleadings, we address his contention that AUA violated his rights to substantive due process. Woodward primarily relies on *Regents of the Univ of Mich v Ewing*, 474 US 214; 106 S Ct 507; 88 L Ed 2d 523 (1985). Initially we note that this case is factually distinguishable, as no "state action" exists here; AUA is a private entity. Moreover, Woodward cannot demonstrate that AUA denied him due process. A hearing regarding the allegations against him was scheduled, but Woodward declined to participate and failed to pursue an available administrative appeal. In addition, considerable record documentation complied prior to Zonia's creation of the memorandum supported Woodward's poor academic performance and unprofessional conduct, substantiating sufficient grounds for his dismissal. As noted in *Ewing*, "[w]hen judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment . . . . [and] they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Id.* at 225 (footnote omitted).

We note that Woodward's contentions regarding breach of contract are, to an extent, inherently contradictory. He asserts both the existence of an express contract arising from the student handbook, and an implied contract based on his payment of tuition. An implied contract may exist only in the absence of an express contract governing the same subject matter between the parties. *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 194-195; 729 NW2d 898 (2006). Further, this Court has previously declined to find an implied contract based on the payment of tuition. *Cuddihy v Wayne State Univ Bd of Governors*, 163 Mich App 153, 156-158;

413 NW2d 692 (1987).  Specifically, this Court observed in *Cuddihy* the improbability "that a graduate student believed that merely by paying . . . tuition fees" that there existed an entitlement to graduation.  *Id.* at 158.  Woodward cites to and relies on a recent unpublished case from this Court in support of his contract arguments.[1]  Woodward's reliance is unavailing, as his cited authority cites to *Cuddihy* and its progeny, stating that "this Court has implicitly rejected the contention that student handbooks, codes, or other informational material create contracts, expressly or otherwise, between universities and their students."  Therefore, we affirm the trial court's grant of summary disposition to AUA on Woodward's breach of contract claim.

Next, we consider the trial court's dismissal of Woodward's claim of invasion of privacy by AUA.  As recognized by this Court in *Dalley v Dykema Gossett*, 287 Mich App 296, 306; 788 NW2d 679 (2010),

> Michigan has long recognized the common-law tort of invasion of privacy . . . .  Today, the invasion of privacy tort has evolved into four distinct tort theories: (1) the intrusion upon another's seclusion or solitude, or into another's private affairs; (2) a public disclosure of private facts about the individual; (3) publicity that places someone in a false light in the public eye; and (4) the appropriation of another's likeness for the defendant's advantage. [*Id.* (internal citations and quotation marks omitted).]

Once again, we note that Woodward's pleadings lack specificity regarding the actual theory of privacy pursued.  Based on our generous construction of Woodward's appellate arguments, we view his claim as one for false light.

This Court has previously found that to establish a viable claim for false-light invasion of privacy, a litigant must demonstrate "a communication broadcast to the public in general or publicized to a large number of people that places the injured party in a light that would be highly offensive to a reasonable person." *Early Detection Ctr, PC v New York Life Ins Co*, 157 Mich App 618, 630; 403 NW2d 830 (1986).  Further, the individual accused of having invaded the plaintiff's privacy "must have had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Id.*  A "cause of action [under this theory] cannot succeed if the contested statements are true." *Porter v City of Royal Oak*, 214 Mich App 478, 487; 542 NW2d 905 (1995).  "[T]he gravamen of this tort is that a defendant's publication 'attribut[ed] to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position.'" *Battaglieri v Mackinac Ctr for Pub Policy*, 261 Mich App 296, 303-304; 680 NW2d 915 (2004) (citation omitted).

The memorandum which serves as the basis for Woodward's false-light claim was a communication between Zonia and Calderon, who were both affiliated with AUA.  This communication was not broadcast to the public.  AUA used the document and its content

---

[1] *Lee v Univ of Michigan-Dearborn*, unpublished opinion per curiam of the Court of Appeals, issued May 12, 2009 (Docket No. 284541).  Under MCR 7.215(C)(1), this case lacks precedential value.

Case: 12-1584    Document: 19    Filed: 09/11/2012    Page: 50

internally, and for a limited purpose. Further, Jeffrey Yanez, M.D. substantively affirmed the accuracy of the various statements in the memorandum. This evidence regarding the truth of the statements precludes Woodward's successful pursuit of a false-light claim against AUA. *Porter*, 214 Mich App at 487.

We next turn to the grant of summary disposition in favor of Zonia and Trinity on Woodward's claims of libel per se and tortious interference with a contract. "Libel" has been "defined as a statement of and concerning the plaintiff which is false in some material respect and is communicated to a third person by written or printed words and has a tendency to harm the plaintiff's reputation." *Fisher v Detroit Free Press, Inc*, 158 Mich App 409, 413; 404 NW2d 765 (1987). To establish his claim for libel, Woodward must show: "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Rouch v Enquirer & News of Battle Creek (After Remand)*, 440 Mich 238, 251; 487 NW2d 205 (1992). "[C]laims of libel must be pleaded with specificity." *Royal Palace Homes, Inc v Channel 7 of Detroit, Inc*, 197 Mich App 48, 52; 495 NW2d 392 (1992).

Woodward has failed to establish the falsity of the challenged statements. In addition, the trial court correctly determined that Zonia's statements were protected by a qualified privilege. "The elements of a qualified privilege are (1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only." *Prysak v R L Polk Co*, 193 Mich App 1, 15; 483 NW2d 629 (1992) (citation omitted). A qualified privilege may be overcome "only by a showing that the statement was made with actual malice, i.e., with knowledge of its falsity or reckless disregard of the truth." *Id.* "General allegations of malice are insufficient to establish a genuine issue of material fact." *Id.*

Woodward has failed to demonstrate that Zonia's statements lacked "good faith." In response to a solicitation from AUA, Zonia prepared and sent the memorandum evaluating Woodward's performance at SJMO. Clearly, AUA and Zonia maintained an "interest to be upheld" regarding the integrity of their program, their affiliation with Trinity, and the proficiency of their students. The content of Zonia's memorandum was "limited in its scope" to a very specific purpose – the evaluation of Woodward's performance in the SJMO program – and was in response to a request from AUA, constituting both a proper occasion and "publication in a proper manner and to proper parties only." *Prysak*, 193 Mich App 15. The trial court correctly determined that the challenged memorandum and its contents were subject to a qualified privilege.

Because he cannot demonstrate that Zonia acted with malice, Woodward is unable to overcome the finding of the existence of a qualified privilege. No record facts suggest that Zonia's comments were false when made, or were made with reckless disregard for their truth or falsity. Rather, the evidence establishes the contrary, that Zonia's statements were based on ongoing concerns voiced by others regarding Woodward's demeanor and conduct. "[S]ubstantial truth is an absolute defense to a defamation claim." *Collins v Detroit Free Press, Inc*, 245 Mich App 27, 33; 627 NW2d 5 (2001). Although Woodward suggests that Zonia did not sufficiently substantiate the various complaints before drafting her memorandum, mere proof

of a failure to investigate, without anything more, is insufficient to establish a reckless disregard for the truth. *Gertz v Robert Welch, Inc*, 418 US 323, 332; 94 S Ct 2997, 41 L Ed 2d 789 (1974).

We also affirm the trial court's dismissal of Woodward's claim of tortious interference with a contract. To establish a claim for tortious interference with a contract it is necessary to show: "(1) a contract, (2), a breach, and (3) and unjustified instigation of the reach by the defendant." *Mahrle v Danke*, 216 Mich App 343, 350; 549 NW2d 56 (1996). "One who alleges tortious interference with a contractual . . . relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or . . . relationship of another." *CMI Int'l, Inc v Internet Int'l Corp*, 251 Mich App 125, 131; 649 NW2d 808 (2002) (citation omitted). As Woodward has failed to meet the first and second requirements to establish this claim, any action for tortious interference against Zonia and Trinity cannot be sustained.

Finally, *sua sponte*, we note that neither party addressed, nor did the trial court specifically rule on, Woodward's claim of intentional infliction of emotional distress. Because Woodward has not identified this claim as an issue for appeal, we view it effectively abandoned. *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003). Moreover, based on our review of the record, Woodward could not have sustained this claim even had he vigorously pursued it. To maintain a cause of action for the intentional infliction of emotional distress, four elements must be established: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v Ford*, 237 Mich App 670, 674; 604 NW2d 713 (1999). Specifically, for liability to be imposed "the conduct complained of [must have] been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* We reject that the content of the challenged memorandum or the actions taken subsequent to its development meet this high standard of unacceptable behavior. As Woodward cannot demonstrate extreme or outrageous conduct, his intentional infliction claim lacks merit.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Brian K. Zahra
/s/ Kirsten Frank Kelly

Case: 12-1584     Document: 19     Filed: 09/11/2012     Page: 52

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

## Case Nos. 12-1128, 12-1584, 12-1585 and 12-1738

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE,

      Plaintiff-Appellee,

v

STEVEN L. WOODWARD,

      Defendant-Appellant

## <u>CERTIFICATE OF SERVICE</u>

Kathy Zalewski, being duly sworn, deposes and says that on the 11th day of September, 2012 she mailed via first class mail a copy of Corrected American University of Antigua's Brief on Appeal to Steven L. Woodward, 7211 Brittwood Lane, Flint, MI 48507.

      <u>s/ Kathy Zalewski</u>