United States Court Of Appeals For The Sixth Circuit

Case No. 12-1128/12-1584/12-1585/12-1738

American University of Antigua College Of Medicine

Plaintiff-Appellee,

v.

Steven Woodward,

Defendant-Appellant.

On Appeal From The United States District Court Eastern District Of Michigan

Southern Division.

Petition ~~Of The United States~~ For Rehearing En Banc

Steven Woodward
7211 Brittwood Ln
Flint, MI 48507
(810)235-7267
Pro Se

Table of Content:

Page

Table of Contents………………………….i

Table of Authorities………………………..ii.

Statutes and Regulations……………………iii.

Rule 35(B)(1) Statement…………………..1

Statement……………… ……………..2

Arguments:

I.  Standards for Summary Judgment and Federal Rules 36 Request for Admissions

II. Standards for Federal Rule 34 Production of Documentation and Court Orders

III. Standards for enjoining free speech and merit

IV. Standards for perjury

V. Standards for enjoined statements

VI-IX. Standards for merit


Certificates of Service

i.

# **Table of Authorities**

**Cases**                                                                                                   **Pages**

1. *Arnstein v. Porter, 154 F.2d 464, 468, 2d Cir 1946*……………………………………*1*

2. *Atria v. Vanderbilt University, 142 Fed.Appx. 246 (2005)*…………………*1, 9, 12, 14, 15*

3. Nehls. 65 F. App'x at 991……………………………………………………………*2*

4. *McFadden v. Ballard, Spahr, Andrews, & Ingersoll, LLP, 243 F.R.D. 1 (D.D.C.)*…*2*

5. *Perez v. Miami-Dade County, 297 F.3d 1255 (11th Cir. 2002)*……………………*3, 6*

6. *Byrnes v. Jetnet Corp., 111 F.R.D. 68, 73, (M.D. N.C. 1986)*……………………*3*

7. *Smith v. First Nat'l Bank, 837 F.2d 1575, 1577 (11th Cir. 1988)*………………*5*

8. *Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir. 1995)*……………………*5*

9. *FDIC v. Prusia, 18 F.3d 637, 640 (8th Cir. 1994)*……………………………*5*

10. *Rubin v. Belo Broadcasting Corp., 769 F.2d 611, 619 (9th Cir. 1985)*……………*6*

11. *Slodov v. United States, 436 U.S. 238, 254, 98 S.Ct. 1778, 1788, 56 L.Ed.2d 251 (1978)*…………………………………………………………………*6*

12. *Fanning v. Fox Meadow Farm, Inc., 164 F.Supp.2d 921.(E.D.Mich. 2001*…………*7*

13. *Cooter & Gell v. Hartmarx Corp., 496 US 384 Supreme Court 1990 R.D. 189, 191 (1988)*………………………………………………………………*7*

14. *David v. Caterpillar, Inc. 324 F.3d 851 (7th Cir. 2003)*……………………………*7*

15. *Salgado v. Gen. Motors Corp, 150 F.3d 735, 742(7th Cir 1998)  8*

16. *U.S. v. Dunnigan, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993)*…………*10*

17. *United States v. Norris, 300 U.S. 564, 574, 57 S.Ct. 535, 539, 81 L.Ed. 808 (1937*…*11*

**ii.**

**<u>Statutes and Regulations</u>**

1. *1st Amendment to the Constitution of the United States*

2. *14th Amendment to the Constitution of the United States*

3. *8A Charles Alan Wright & Arthur R. Miller. Federal Practice and Procedure, 2035 (3d ed. 1998)……………………………………………………………………3*

4. *Fed.Rules Civ.Proc.Rules 26(a)(1)(A), (e)(1), 37(c)(1), 28 U.S.C.A……………7*

5. Family Educational Rights and Privacy Act, (FERPA), 20 U.S.C. 1232g……...8, 15

6. *False declarations before grand jury or court18 U.S.C. 1623…………………...15*

## Ruler 35(B)(1) Statement

Woodward respectfully requests the Court vacate the Order [Dkt 006111622984] of panel Clay and Rogers, Circuit Judges; Graham, District Judge; district court Summary Judgment Order [Dkt 184], Order [185] and Judgment [Dkt 221] and grant a rehearing en banc . This request is to ensure uniformity of decisions between, this Court, other circuits, the rulings of the District Court, and Supreme Court regarding the rights and legal actions of every college/university student and the Rights guaranteed by the 1st Amendment. The panel erred in the facts about: Woodward's merits, timely response to Federal Rule(FR) 36 Request for Admissions, Woodward's answers to FR 36 admission, application of admissions "two part test", Woodward's discovery violation claims, the motion for Summary Judgment, the existence of a genuine dispute including counterclaims, student contract laws, conflicting rulings from the District Court and Sixth Circuit Court, narrowly defined enjoined statements, and basic facts surrounding the Woodward's Michigan case against AUA et al. Woodward is a Whistleblower; to rule against Woodward will weaken the 1st Amendment, 14th Amendment, and contradict laws intended to protect college/university students within the Sixth Circuit and the United States. This case involves student safety concerns such as dismissed students that engage in mass shootings; student mental health, i.e. 50% of students experience burnout and 10% experience suicidal ideation during medical school [Dkt 156-4, pg 5] and The Clery Act, 20 U.S.C. § 1092(f). *"Summary Judgment must be denied when there is the slightest doubt to the facts." [Arnstein v. Porter, 154 F.2d 464, 468, 2d Cir 1946], "the court must take the nonmoving party's well-pleaded allegations as true [Atria v. Vanderbilt University, 142 Fed.Appx. 246 (2005)]*

1

Case: 12-1584    Document: 54    Filed: 03/27/2013    Page: 6

## Statement

This is a Civil Rights case. Woodward defeated American University of Antigua College of Medicine's,(AUA) allegations of violations of Lanham Act, 15 U.S.C 1125(c), Anticybersquatting Consumer Protection Act, 15 U.S.C. 1125(d), and the Family Educational Rights and Privacy Act, (FERPA), 20 U.S.C. 1232g. Woodward won the majority of AUA's defamation claims (nine(9) of sixteen) from a verified complaint and sworn affidavit from Neal Simon, JD. President, affidavit "I hereby attest that each and every allegation contained herein is true to the best of my knowledge, information and belief" [Dkt 1, pg 12] now proven false. As a pro se, Woodward's merits have proven to be overwhelming.

**I)** Woodward emphatically admitted the seven statements are "True". The seven statements are defamatory under Michigan law unless true. See Nehls. 65 F. App'x at 991 [Dkt 006111622984, pg 5]. Woodward never asked to or filed any motion to withdraw any responses to these admissions. Woodward filed a Motion of Protective Order [Dkt 56] shortly after receiving the FR36 admissions. AUA acted in bad faith, refusing served discovery on multiple occasions, Dec. 22, 2010 and Feb. 1, 2011. The Court failed to properly apply the two part test of FR36(b).

**A)** AUA served FR 36 Request for Admissions on Nov. 8th, 2010. Woodward admitted to publishing and the truth of the seven statements, or similar to, prior to AUA's FR 36 requests in answers to AUA's complaint and motions [explained in Dkt 188, pg 5(b)-7]; AUA used FR36 to harass and burden Woodward. *"Requests for admissions are not a discovery device but are designed to narrow the issues for trial." [McFadden v. Ballard, Spahr, Andrews, & Ingersoll, LLP, 243 F.R.D. 1 (D.D.C.)]; "uses the rule to harass the*

2

*other side or, as in this case, with wild-eyed hope that the other side will fail to answer",*

*"the rule instead becomes a weapon" [Perez v. Miami-Dade County, 297 F.3d 1255 (11th*

*Cir. 2002)]*

**B)** Woodward filed Motion for Protective Order [Dkt 56] on Nov. 19, 2010; it was heard

Dec. 22, 2010; and Order [Dkt 88] ruled on Docket 56 on Jan. 05, 2011. Woodward's

discovery would not be due until Dec. 22, 2010 for "on motion" per FR36(b). These

facts are verified [Dkt 204, pg 13, ln 22]

"The Court: Just now—well, fine, isn't that true?  You failed to file admissions?
Woodward: That is not true.  That is absolutely not true.
The Court: Did you file it timely?
Woodward: I had a motion for protection order and my understanding on motion for
protection order, which was not held until December 22nd for written and verbal things
because they were deleting evidence off their website pertinent to this case and that was
my motion for protective order and that was my motion for dismissal.
The Court: Did you file the answers timely?
Woodward: I filed his answers per the Rule 36 on a motion to the Court for a protective
order and on December 22nd I brought that information to him."

Woodward for following Federal Practices and Procedures, but is being denied a trial.

*"requests for admissionsor.... seek a protective order." [8A Charles Alan Wright &*

*Arthur R. Miller. Federal Practice and Procedure, 2035 (3d ed. 1998)]*

*"Must seek protective order" [Byrnes v. Jetnet Corp., 111 F.R.D. 68, 73, (M.D. N.C.*

*1986)]*

**C)** AUA refused to accept any of Woodward's discovery responses.  AUA acted in bad

faith concerning discovery.

**1)** Woodward notified AUA the responses would be available Dec. 22, 2010; depended

on the Court ruling on Docket 56.  Woodward's email dated 12/16/2010 at 12:15:52 PM

[Dkt 83, pg 8]

3

"Depending on the Decisions and Order by the Honorable Judge Michael Hluchaniuk: Please schedule time after the December 22nd Hearing to sign-for(verify receipt) and receive approximately 2,500 pages of my Exhibits and Rule 26 documentation, my answers to your Interrogatories, Request for Admissions, and Request for Production. What you receive will depend on the Order and Decision of the Court.  Please bring with you all documentation he Defendant has requested and the answers to: Defendant's Interrogatories to Plaintiff, Defendant's Request for Documentation and Defendant's Request for Admissions"

**2)** Judge Hluchaniuk and AUA witnessed and verified Woodward admission response

was served to AUA during the Dec. 22, 2010 hearing.

[Dkt 205, pg 41, line 14]

Woodward "This is all of my documentation that I would like him to sign for today.  He's seen it.  You're scheduled, I sent you an email concerning that, that today would be a good time for you to sign for this information"

[Dkt 205, pg 45, line 12]

Woodward: "Any documents that he request, all his answers to his interrogatories, all of his answers for his admissions, all of his documentation is here."
Mr. Buikema: "It's there but I didn't address it quite intentionally.  It's not before you today."
Judge Hluchaniuk: "It's not scheduled for today.  I'm just noting the existence of it.  And Mr. Woodward is saying that he intends to comply with that today.  Whether that's actually comes to pass is another issue, which we may address at a later time.  But certainly I would invite you Mr. Buikema to look at what Mr. Woodward has brought to court today and accept what he has and then make a determination of whether that satisfies your motion"

[Dkt 205, pg 46, line 4]

Judge Hluchaniuk: "But if has documents for you to take with you, I would certainly encourage you to take those and then assess the completeness of that production as soon as you possibly can."
Mr. Buikema: "I will".

(Mr. Buikema left without inspecting or taking any discovery.)

**3)** Mr. Buikema refused discovery again on Feb. 1, 2011, during the deposition;

Woodward called Judge Hluchaniuk [Dkt 170, pg 84, ln 19]

4

Woodward(SW) "I brought every single thing that I was suppose to bring to the best of my knowledge again I have over 2,600 pieces of paper here this is the documentation that Mr. Buikema did not take during our last hearing."

Mr. Buikema's refusing discovery, Feb. 1, 2011 [Dkt 170, pg 88, line 15]

Woodward(SW) "Do you want to witness the visual aids at this time while you are here it'll take two minutes.", "I'd like it on anyway my recording Mr. Buikema is now leaving refusing again to view, ah, visual aids."

[Dkt 170, page 89],
Woodward(SW) "He didn't take his answers to his Interrogatories either",
Cheri Gleyre (CG) (Stenographer) "That wasn't marked was it? He didn't mark it as an exhibit",
Woodward(SW) "He didn't want it again, OK"

4) On Aug. 11, 2011 Mr. Buikema admits to refusing discovery on Dec. 22, 2010 and

Feb. 1, 2011.  [Dkt 169, pg 24, line 23]

Mr. Buikema "But it's true, I'll stipulate, for the record, that I left the hearing without

accepting the banker's boxes that Mr. Woodward brought to that hearing"

[Dkt 169 ,page 24, line 9]

Mr. Buikema "Yes, I refused to accept documents in lieu of an answer of my question, is

what he's referring to, I believe"

D) AUA used FR 36 Request for Admissions as a weapon and to harass Woodward

violating FR 11(b).  Discretion for FR 36 responses depend on "two part test"

[Smith v. First Nat'l Bank, 837 F.2d 1575, 1577 (11th Cir. 1988)] and [Hadley v. United

States, 45 F.3d 1345, 1348 (9th Cir. 1995)]; [FDIC v. Prusia, 18 F.3d 637, 640 (8th Cir.

1994)]

1) As a pro se, Woodward's successful merits are proven to be overwhelming; defeating

the vast majority of AUA's claims.

**2)** It is impossible for Woodward to prejudice AUA when they refuse to accept admission responses witnessed and served before Judge Hluchaniuk on Dec. 22, 2010 and again on Feb. 1, 2011. The Court's "March, 2011" date of response to admission service in the Order [Dkt 184, pg 4, ln 14] is erred. The responses were served Dec. 22, 2010, AUA refused discovery. Woodward is denied a trial for AUA's bad faith in refusing discovery. *"District Court Failed to apply properly the two-part test of Rule 36(b)" [Perez v. Miami-Dade County, 297 F.3d 1255 (11th Cir. 2002)]*

Woodward is punished, refused trial, for following Federal Practices and Procedures. *"a court should not go beyond the necessities of the situation to foreclose the merits of controversies as punishment." [Rubin v. Belo Broadcasting Corp., 769 F.2d 611, 619 (9th Cir. 1985)] ""was not intended to impose liability without personal fault" [Slodov v. United States, 436 U.S. 238, 254, 98 S.Ct. 1778, 1788, 56 L.Ed.2d 251 (1978)]*

**II)** Woodward served discovery requests to AUA on Nov. 22, 2010. AUA refused to produce FR 34 Producing Documents by the close of discovery, April 11, 2011[Dkt 94]. AUA's Motion for Summary Judgment [Dkt 143] containing requested exhibits, was filed on April 29, 2011, after the close of discovery. AUA's Motion for Summary Judgment, and every motion with requested exhibits, filed after April 11, 2011 violates FRCP 37(c)(1). AUA is barred production and Docket 143 violates FRCP 11(b)(1) for improper purpose, such as to harass. *"A plaintiff should not be permitted to maintain litigation before a federal court when the plaintiff initially asserts....but then refuses to disclose the evidence in support of that assertion even to the point of dismissing a claim for relief rather than disclosing evidence. Such behavior is not consistent with a good faith assertion", "which were not produced prior to expiration of discovery deadline"*

6

Case: 12-1584     Filed: 03/27/2013     Document: 54     Page: 11

*[Fanning v. Fox Meadow Farm, Inc., 164 F.Supp.2d 921.(E.D.Mich. 2001] "Rule 11's requirement that a court "shall" impose sanctions "if a pleading, motion, or other paper is signed in violation of this rule" [Cooter & Gell v. Hartmarx Corp., 496 US 384 Supreme Court 1990 R.D. 189, 191 (1988)],*

AUA's should have been automatically sanctioned per FRCP 11(c)(3), FRCP 34(b)(2)(A), FRCP 37(b)(2)(A)(i-vii) and FR 37(c)(1).

**A)** Woodward had to file Motion to Compel [Dkt 121] because AUA failed to produce a FR 34 response. The Court ordered AUA to respond in Order [Dkt 124]; AUA failed to respond to FR 34 requests. Woodward filed motions [Dkt 135 and Dkt 136] because of AUA's failure to comply with Order [Dkt 124]. AUA did not respond to Woodward's FRCP 34 requests until Nov. 11, 2011 [Dkt 212-2 pg 50 - 212-3 pg 1-17], <u>a year after being served and without production</u>. Woodward FR 34 requests include "18. Please produce a copy of all documents identified by Plaintiff's Rule 26 disclosure." [Dkt 121, pg 5]. Order [Dkt 124] states "including granting all or part of the relief requested by the moving party"; sanctions per FRCP 37(b) and FRCP 37(b)(2)(A)(i)-(vi). The Court must, but did not, automatically sanction AUA. *"the sanctions of exclusion is automatic and mandatory" Fed.Rules Civ.Proc.Rules 26(a)(1)(A), (e)(1), 37(c)(1), 28 U.S.C.A." [David v. Caterpillar, Inc. 324 F.3d 851 (7th Cir. 2003)]*

AUA was automatically barred from defending their claims or seeking damages after April 11, 2011 per FR 37(c)(1), per FR 26(a)(1)(A)(iv), and FRCP 34. FRCP 37(c)(1) "the party is not allowed to use that information", "at a hearing , or at a trial", or motion. The Court allowed AUA to produce exhibits after being barred. AUA is without a case as of April 11, 2011 prior to Summary Judgment [Dkt 143].

*"failed to comply with court's deadline for the submission","without a case", "shall not, unless such failure is harmless, be permitted to use as evidence at a trail, at a hearing, or on a motion any witness or information not so disclosed" [Salgado v. Gen. Motors Corp, 150 F.3d 735, 742(7th Cir 1998)].*

**B)** Woodward followed FR 37(a)(1) prior to filing a Motion to Compel [Dkt 121] extending nearly three months to AUA to produce documentation, but AUA still failed to comply. Woodward notified the Court and AUA [Dkt 95] that he had to leave the country between Feb. 2, 2011 thru March 7, 2011. It was either impossible or extremely difficult for Woodward to perform Court functions during this time.

**III)** Court Orders [Dkt 184 and Dkt 185] show merit that AUA breaches contracts. The District Court Orders [Dkt 184 & Dkt 185] conflict, creating a paradoxical trap.

**A)** AUA breached a contract during this case by refusing Woodward his own student records. Woodward's student records and medical records comprised over 50% of the FRCP 34 requests (of only 46 requests) [Dkt 121, pg 4-7]. Woodward attempted to obtain his own records after Nov. 11, 2011 without success to this day. In the process AUA, again, violated Federal Law (FERPA 20 U.S.C. 1232g) and AUA's Student AUA Student Handbook:[Dkt 188, pg 150] "The student has the right to inspect and review his educational record within 45 days of the University's receiving a written request for access." Woodward filed Motion to Compel [Dkt 121], March 24, 2011.

"The Plaintiff refuses to produce any of the requested documentation, including the Defendant's, Steven Woodward, own school records"

8

**B)** AUA admits private student records were disclosed in their FERPA claim against Woodward. AUA's defense was "tortious interference" [Dkt 19, pg15, ln22]. The Student Handbook states [Dkt 188, pg 148] "The rules and regulations outlined here are binding", they admit harm to the students [Dkt 1, pg 9, #50] and [Dkt 188, pg 150] "The University adheres to the mandates of the United States Family Education Rights and Privacy Act (FERPA)". AUA testified to their contractual obligation, harm, the student handbook uses contractual terminology "binding" and they adhere to student privacy per FERPA which they failed. AUA beached contracts with over 150 students.

*"This court applies Tennessee's law, has stated that "the student-university relationship is contractual in nature although courts have rejected a rigid application of contract law in this area." Doherty v. Southern College of Optometry, 862 F.2d 570, 577 (6th Cir. 1988) Catalogs, manuals, handbooks, bulletins, circulars and regulations of a university may help define this contractual relationship. Ross, 957 F. 2d at 416" [Atria v. Vanderbilt University, 142 Fed.Appx. 246(2005)]*

**C)** Breach of contract of this nature is a civil offense not criminal. The Court [Dkts 184, 185 and 221] enjoin Woodward from the statement "AUA breaches contracts" based on the suggestion of criminal activity [Dkt 184, pg 19, ln 2] "accusations of criminal activity". Woodward is a "Whistblower" and can legally expose AUA for disclosing private student records, but in doing so violates Court Orders, for implying contracts. It is impossible that Woodward should be barred by the doctrine of collateral estoppel or res judicata [Dkt 184, pg 22, ln 8] for exposing FERPA violations and Woodward's new counterclaim against AUA for failing to produce Woodward's student records.

**IV)** Woodward never stated "AUA students are sexually assaulted" as AUA claimed [Dkt 1, pg 10 "h"]. AUA's own exhibit [Dkt 8-4, pg 2] states "AUA student sexually assaulted!". AUA testified "An AUA student was sexually assaulted" [Dkt 19, pg 19, ln

22] and Woodward verified "An AUA student was sexually assaulted" [Dkt 19, pg 37, ln 5]. AUA's defense was "in the tense" [Dkt 19, pg19, ln 8] which is a known lie before the Court. In all fairness to Woodward this case should have been dismissed April 19, 2010. [Dkt 19, pg 19, ln 19]

The Court: That's the spin you put on it. But the statement itself is true, "AUA students are sexually assaulted", have they?

Mr. Buikema: An AUA student was sexually assaulted.

AUA's attempt to suppress sexual assault of their student is a blatant disregard for The Clery Act, 20 U.S.C. 1092(f).

Woodward never stated [Dkt 1, pg 10, "l"] "AUA student pass rate for USMLE medical board exams is only 22.9%". AUA's own exhibit [Dkt 8-4, pg 2] verifies Woodward wrote "Antigua only has a 22.9% USMLE Pass Rate!" Woodward never made these statements. AUA and Neal Simon knowingly lied in a verified complaint, in a sworn affidavit, and AUA lied during the April 19, 2010 hearing. Woodward filed motions to dismiss for perjury [Dkt 16, and Dkt 27]. AUA did not attempt to rectify this error, instead pressed known lies in future motions [Dkt 45, pg 9-10 and Dkt 143, pg 9]

*"Perjury as willfully false testimony under oath concerning material matter" [U.S. v. Dunnigan, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993)]*

*"Whoever, having taken an oath before a... or person, in any case... that he will testify, declare...or certify truly...is true, shall willfully and contrary to such oath state or subscribe and material matter which he does not believe to be true, is guilty of perjury" [United States v. Norris, 300 U.S. 564, 574, 57 S.Ct. 535, 539, 81 L.Ed. 808 (1937)],*

The majority of AUA's verified complaint and Simon's affidavit are proven lies.

**V)** The judgments against Woodward are not narrowly tailored. Woodward filed two

motion requesting assistance to ensure he obeyed the courts Orders, instead he was held

in contempt. [Dkt 199, pg 12, ln 17]

"<u>Woodward:</u> There are paragraphs of this stuff, Your Honor, how much of it do you want
me to remove?
<u>The Court:</u> **Everything relating to falsifying grades.** Doesn't that make sense to you"
<u>Woodward:</u> No, it does not when I can't find that exact statement on there, sir.
<u>The Court:</u> Okay, I'm just going to hold you in contempt."

Prior to the hearing Woodward requested assistance from the Court and AUA concerning

what material should be deleted. Woodward had multiple web sites, as many as 1,000's

of lines of code; hundreds of pages of documentation, and hours of audio to review to

find and remove these seven(7) statements.

 [Dkt 189, pg 2] "Mr. Woodward is more than willing to cooperate with the Court in

these matters" and [Dkt 190, pg 3] "Mr. Woodward will attempt to make a solution and

encourages Mr. Buikema to assist in finding these seven statements.", "Removing non-

actionable statements would be more causation for a violation of Mr. Woodward's Civil

Rights"

**VI)** The 5th Semester Course Syllabus [Dkt 27, pg 43-44] "<u>Evaluation and Grading</u>" and

"<u>Components included in Grade Calculations</u>" defined the 5th Semester grading

requirements. The 5th Semester Final Grades [Dkt 212-2, pg 5] show AUA did in fact

falsify student grades. The final grades show 70% of the students should have failed the

course per the requirements; excluding the faulty final exam, and 90% failed without a

curved final exam. AUA grading is unfair, discriminates, and violates the contractual.

*[Atria v. Vanderbilt University, 142 Fed.Appx. 246(2005)]*

**A)** Students Hampel(1)"54", Jayadeep(2)"57", Ozuomba(3)"56", and Paras(8)"58" failed the 60% minimal total quiz score [Dkt 27, pg 44]. AUA passed three of the students, but failed Ozuomba(3). Students Hamed(9) and Kristen(10) failed minimal Out-Patient sessions attendance of 90% [Dkt 27, pg 44], but passed both students. Student Chheda(4) failed Attendance "75%", Prac Session "75%" both requiring a minimal 85% attendance [Dkt 27, pg 43], and Practical Exam "75%" the minimal requirement is 80% [Dkt 27, pg 44], AUA passed Chheda.

**B)** AUA changed from ExamMaster testing software to Scholar360 software the week before the final exam, because the ExamMaster testing software was faulty. Dr. Yanez the Program Director and AUA faculty wrote [Dkt 172, pg 46]

"Please log onto scholar360 and set up your account before this Fridays final exam",

"AUA and myself are eating a little crow. The Exam Master results sent out last week were NOT correct" and "For the final exam Friday. If you encounter a question that is "messed up" for any reason just skip it and move on".

AUA promised a 10% final exam curve. Without the curve, 6 of 10 students would fail the final exam. Dr. Yanez testified [Dkt 212-1, pg 42, dep pg 25, ln 14] "AUA has decided to apply a 10 percent curve". Dr. Yanez testified [Dkt 212-1, pg 42, dep pg 24, ln 7] "There was some problem with his electronic version of the exam and they did allow him a retake." concerning Woodward's exam. Dr. Yanez wrote Woodward [Dkt 172, pg 47] "Due to testing irregularities, AUA will allow you a retake on the Vocabulary section" and "You will need a total score of 560 out of 800. 80% (640 questions) less the 10% curve = 560 questions." Woodward received an 88 out of 100 on the "Vocabulary"

section of the "messed up" exam. Woodward's final exam score was 568 [Dkt 172, pg

48]. Dr. Yanez, the Program Director, verifies Woodward passed the final exam.

**C)** AUA added a falsified note to Woodward's grades Note (3) "Failed Final Exam. Did

take remedial and failed" [Dkt 212-2, pg 5]. Woodward retook the "Vocabulary" section

because AUA's testing software did not work "testing irregularities" [Dkt 27-1, pg 4] the

test was not "remedial". Woodward earned an 88% (88 out of 100) which is not "failing"

[Dkt 27-1, pg 5]. Dr. Yanez verifies Woodward "passed" the final exam.

**D)** AUA was contractually obligated to issue the 10% curve [Dkt 27-1, pg 4]. Without

notice, AUA changed the curve from 10% to 4% (5% for Hamed(9)). AUA defrauded

students by assigning a 4% instead of the promised 10% curve. Per the Syllabus passing

minimal requirements, 90% (9 of 10) of the students should have failed the 5th Semester

without the curve. Simple addition shows student final grades are false. The "Actual"

column is calculated with a 4% final score and "+10 Final" is the adjusted actual final

score with a 10% curve to the final exam score.

| Student #: Summation of PT scores | = Actual | -Final, | Grade, | +4%, | +10%, | +10 Final |
|---|---|---|---|---|---|---|
| 1)  9.2+4.6+5.0+5.0+10.0+18.9+16.2+9.5= | **78.4** | **78** | **C** | 81 | 87 | 79.6 |
| 2) 10.0+5.0+4.0+5.0+10.0+20.1+16.8+9.5= | **80.4** | **79** | **C** | 84 | 90 | **81.6** |
| 3) 10.0+5.0+4.2+5.0+10.0+19.6+14.8+8.0= | 76.6 | 77 | F | 74 | 80 | 77.8 |
| 4) 7.5+3.8+4.3+5.0+10.0+21.7+18.0+7.5= | 77.8 | 76 | C | 90 | 96 | 79 |
| 5) 10.0+5.0+4.8+5.0+10.0+24.4+17.6+8.5= | 85.3 | 83 | B | 88 | 94 | 86.5 |
| 6) 10.0+5.0+4.8+5.0+10.0+22.6+15.4+8.5= | **81.3** | **83** | **C(-)** | 77 | 83 | **82.5** |
| 7) 10.0+5.0+4.8+5.0+10.0+21.6+15.0+8.0= | **79.4** | **80** | **F** | 75 | 81 | **80.6** |
| 8) 10.0+5.0+4.6+5.0+10.0+20.4+16.6+8.0= | 79.6 | 81 | B | 83 | 89 | 80.8 |
| 9) 10.0+5.0+0.0+5.0+10.0+24.4+18.4+9.3= | 82.1 | 82 | B | 92 | 97 | 83.1 |
| 10) 10.0+5.0+0.0+5.0+10.0+23.9+16.4+8.0=**78.3** | | **83** | **B** | 82 | 88 | **79.5** |

The "Minimal final written exam score" was 80%, with only the 4% curve student

Evans(6) should have failed with a "77", but AUA passed Evens. AUA passed all the

women who failed; discrimination violates their student handbook "The University does

not discriminate" [Dkt 212-3, pg 20]. Student Kristen(10) had one of the lowest grades but received a "B", higher than Evans(6) 82.5 "C-", Jayadeep(2) 81.6 "C' and Woodward(7) 80.6 "F'.

**E)** AUA failed Woodward(7) having earned a higher than students Hampel(1)"C" and Chheda(4)"C". AUA violated their contractual agreement of fair grading and for not applying the 10% curve. *[Atria v. Vanderbilt University, 142 Fed.Appx. 246(2005)]*

**VII)** AUA's Student Handbook states [Dkt 188, pg 149, par 7], "The student has the right to counsel" AUA's [Docket 212-1 pg 1, par 3, line 3] "Notice of Grievance Committee hearing" states "as you experienced in Antigua (i.e.,no recording devices, no legal council" violating due process and breach of contract. These are some of the reasons Woodward filed a lawsuit against AUA, et al on Dec. 20, 2007 [Dkt 34-1, pg 3-4]. The final grades were dated Jan. 6 2008 [Dkt 27-1, pg 9] and Woodward was dismissed on May 21, 2008 [Dkt 34-1, pg 18]. AUA failed Woodward for filing a lawsuit against AUA et al. AUA, et al made blatant False Declarations before the Michigan Courts [Dkt 27, pg 20] "Woodward took and failed the fifth semester Final Exam" [Dkt 56, pg 9] "Plaintiff "washed out" of the fifth semester" false declarations before the court; violating *[18 U.S.C. 1623]*.

**VIII)** Neal Simon signed the "Clinical Clerkship Affiliation Agreement" [Dkt 27, pg 28] which states "program will include rotations in Internal Medicine, Surgery, Family Medicine, Pediatrics, and Obstetrics and Gynecology and electives", the 5th Semester Course Syllabus [Dkt 27, pg 37], and Course Guideline [Dkt 27-1, pg 21] both repeat the contract of at least six clinical rotations. The Schedule of Clinical Rotations shows

14

Woodward and Paras Chahal were only scheduled for three rotations [Dkt 27-1, pg 18]

but only received Internal Medicine and Family Medicine(A2)[Out-Patient]. AUA

cheated each student as much as 66% of the course according to three separate contracts.

*[Atria v. Vanderbilt University, 142 Fed.Appx. 246(2005)]*

**IX)** Oakland County Circuit Court Case, OCC, No. 07-088103-CZ states

"Unprofessional" behavior [Dkt 212-2, pg 33] and Michigan Court of Appeals, MCA,

No. 292172 (Dkt 212-2, pg 39, par.3) "Mr. Woodward's lack of professionalism".

Woodward's 5th Semester Evaluations for "Professionalism" were "**95**" [Dkt 27-1, pg 10]

and "90" [Dkt 27-1, pg 12] equating to "OUTSTANDING". Dr. Breitenbach wrote

"Excellent Student" under "General observations on the student's performance" [Dkt 27-

1 pg 11]. Dr. Malloy or Dr. Breitenbach were in charge of clinical instruction for

Woodward, Monday – Thursday [Dkt. 27-1, pg 18].

The Court and AUA held Woodward to a higher standard of "professionalism" than

AUA; violating Woodward's 14th Amendment Rights.  One proven example is AUA's

disclosure of private student records, which violates the AUA student handbook and

Federal Law, i.e. FERPA, 20 U.S.C. 1232g.

Steven Woodward
7211 Brittwood Ln
Flint, Michigan 48507
(810) 235-7267

**<u>Certificate of Service</u>**

The undersigned certifies that the foregoing **<u>Petition Of The United States For</u>**

**<u>Rehearing En Banc</u>** and this Certificate of Service were served upon Plaintiff by U.S.

mail to American University of Antigua, via council, Eric A. Buikema (P58379),

Buikema PLLC, 33228 W. 12 Mile Rd., Ste. 313, Farmington Hills, MI 48334

Steven Woodward
7211 Brittwood Ln
Flint, Michigan 48507
(810)235-7267

1



se Rush To Addressee

*Schedule package pick*

*Print postage online - G*

# EXPRESS MAIL
**UNITED STATES POSTAL SERVICE**

*Legal Size Env*

*For Domestic and Internatio*



EI 688995751 US

## EXPRESS MAIL
**UNITED STATES POSTAL SERVICE®**    **Post Offi**

**DELIVERY (POSTAL USE ONLY)**

| Delivery Attempt | Time | ☐ AM ☐ PM | Employee Sign |
| Mo.    Day | | | |
| Delivery Attempt | Time | ☐ AM ☐ PM | Employee Sign |
| Mo.    Day | | | |
| **Delivery Date** | **Time** | ☐ AM ☐ PM | Employee Sign |
| Mo.    Day | | | |

**CUSTOMER USE ONLY**

PAYMENT BY ACCOUNT
Express Mail Corporate Acct. No.

Federal Agency Acct. No. or
Postal Service Acct. No.

**NO DELIVERY** ☐Weekend ☐Holiday

### ORIGIN (POSTAL SERVICE USE ONLY)

| PO ZIP Code | Day of Delivery | Postage |
| 48480 | ☒Next ☐2nd ☐2nd Del. Day | $ 19.95 |
| Date Accepted | Scheduled Date of Delivery | Return Receipt Fee |
| 3 26 13 | Month ____ Day 3·27 | $ |
| Mo. Day Year | Scheduled Time of Delivery | COD Fee | Insurance Fee |
| Time Accepted | ☒Noon ☐3 PM | $ | $ |
| 10 24 ☒AM ☐PM | Military | Total Postage & Fees |
| Flat Rate or Weight | ☐2nd Day ☐3rd Day | $ 19.95 |
| ___ lbs. ___ ozs. | Int'l Alpha Country Code | Acceptance Emp. Initials |

**FROM:** (PLEASE PRINT)     PHONE (    )

Steven Woodward
7211 Brittwood Ln
Flint, MI. 48507

**TO:** (PLEASE PRINT)     PHONE (    )

united States Court of
for the Sixth Circuit
100 East Fifth Street,
Potter Stewart US.
Cincinnati, OH 45202
Attn: Clerk Mese

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR FOREIGN POSTAL

4 5 2 0 2 + ☐☐☐☐

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW

### FOR PICKUP OR TRACKING

Visit **www.usps.com**

Call 1-800-222-1811

⟩EMS

Visit _____    We Deliver

**PRESS HARD. YOU ARE MAKING 3 COPIES.**